UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER JONES | * | |
| Petitioner, | * | |
| | | Civil No. _____ |
| v. | * | |
| | | Criminal No.  CCB-14-0234 |
| UNITED STATES OF AMERICA | * | |

* * * * * * * * * * *

**<u>MOTION TO VACATE OR CORRECT ILLEGAL SENTENCE</u>**

Petitioner Christopher Jones, through his attorney, C. Justin Brown, Brown & Nieto, LLC, hereby moves this Honorable Court, pursuant to 28 U.S.C. § 2255, to vacate or correct his illegal sentence.

This is a case in which an innocent man pleaded guilty to a crime he did not commit, and then spent three years in prison for that crime. All of this occurred because Baltimore City police officer Daniel Hersl, who has since been federally indicted for racketeering, fabricated charges and planted evidence against him. From the time he was arrested in this case, Jones told anyone who would listen that he was innocent. Nevertheless, because he did not know of the substantial evidence of Hersl's corruption, he was compelled to plead guilty. This Court should correct this miscarriage of justice and vacate Jones' sentence.

### I.      PROCEDURAL HISTORY

Jones was charged by indictment with possession of a firearm and ammunition by a felon, in violation of 21 U.S.C. § 922(g)(1) (Count One); and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two).

On March 25, 2015, pursuant to Rule 11(c)(1)(C), Jones pleaded guilty to Count One of the indictment and was sentenced to 41 months, followed by three years of supervised release.

On November 28, 2016, while on supervised release, Jones was arrested and charged in Baltimore County with several drug-related offenses. As a result, Jones' supervised release was revoked on March 3, 2017. Jones admitted having violated several conditions of his supervised release, and on May 23, 2017, Judge Catherine C. Blake sentenced Jones to 12 months and one day in the Bureau of Prisons.

Jones did not file an appeal or any other post-conviction motions after the initial imposition of his sentence. This motion is timely filed pursuant to 28 U.S.C. § 2255(f)(4), which allows a petition based on newly discovered evidence to be filed within one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

## II.   FACTS

**a. The Arrest**

On November 10, 2013, at about 9:20 p.m., Christopher Jones was waiting for his girlfriend outside her house at 2301 Aiken Street, speaking on the phone, when an unmarked police car pulled up to him. Four Baltimore City police officers jumped out of the vehicle.[1] One of the officers, Daniel Hersl, had arrested Jones nine days earlier and – apparently surprised to see Jones – he asked Jones how much he had paid to get out of jail. Ex. 1 (Susan Hensler notes, Sept. 2014).

Hoping to avoid any problems, Jones threw his hands up and told the officers he did not have anything on him. The officers sat Jones down on the curb, cuffed him, and frisked him. Finding nothing on his person, they left Jones on the curb while they searched around the block. After several minutes of searching, Hersl returned with a bag of drugs, suggesting they belonged

---

[1] The four officers who stopped Jones were Daniel Hersl, Jordan Moore, Joseph Wizculis, and John Burns.

to Jones. Hersl then offered to let Jones go in exchange for a gun. When Jones told Hersl that he didn't "know nothing about no guns," Hersl threatened that if he found any guns, he was going to pin them on Jones. Ex. 1.

The officers then placed Jones in a transport van and left him there while they searched the area. After about 20 minutes, Hersl came to the back of the transport van with a gun and told Jones, "this is yours." Ex. 1; Ex. 2 (Gary Christopher notes, Jan. 28, 2015). At first, Jones thought it was a joke; but he was transferred to the Eastern District precinct, where Hersl again asked Jones to get him a gun. Jones was ultimately charged with possession with intent to distribute and possession of a firearm by a felon. He was denied bond and remained in jail while the case was pending.

### b. The Incident Report

In their report, the officers concocted a different story – one that Jones has adamantly denied since his arrest. In his version of the encounter, Officer Joseph Wizculis stated that, after spotting the police in their unmarked vehicle, Jones, who was on the phone, dropped a plastic bag on the ground. According to Wizculis, that is when Jones stated, "I don't have nothing." Moore retrieved the plastic bag and Jones was placed under arrest. Wizculis wrote that, while waiting for the transport wagon to arrive, Jones looked at Hersl and said, "Hersh, let me get you a gun." According to the report, Hersl "immediately stopped Jones from speaking and advised Jones of his *Miranda* rights." Jones allegedly acknowledged his rights, according to the police story, but continued to incriminate himself by telling Hersl where the gun was and that he was the one who put it there. Ex. 3 (BPD Incident Report, 11/10/2013).

3

### c. Prior Encounters with Hersl

Hersl and Jones had a history of antagonistic encounters. Just nine days prior to the instant arrest, on November 1, 2013, Hersl and Moore, along with Officer Timothy Romeo, arrested Jones and charged him with possession of cocaine and less than ten grams of marijuana.[2] The allegations in that case were similar to those in the instant case – drugs were not recovered from Jones' person; rather, Jones allegedly observed officers in their unmarked vehicle, dropped a "baggie" holding "several small objects" – which Hersl recovered – and then Jones was arrested. Ex. 4 (Statement of Probable Cause, 11/1/13). During this arrest, Hersl stole $1,800.00 from Jones, which Hersl neither reported nor submitted to the Baltimore Police Department.

In addition to this arrest, Jones had previously encountered Hersl between five and six times. Each time, Hersl stole money from Jones.

### d. Jones' Federal Case, Maintains Innocence

The U.S. Attorneys Office ultimately picked up Jones' case, indicting him on May 13, 2014, for the same charges. The State, however, did not dismiss its case against Jones until July 23, 2014. Meanwhile, Jones remained detained.

Due to an internal error at the detention center, rather than being transferred to federal custody, Jones was released from state custody on August 21, 2014. However, two weeks later, Hersl spotted Jones in his neighborhood, asked him why he was out of jail, stated that ATF was looking for him, and arrested him. Federal agents later picked Jones up from Baltimore City's Central Booking facility.

Initially, Assistant Federal Defender Susan Hensler was appointed to represent Jones. During their meeting after his detention hearing, Jones immediately told Hensler he was innocent

---

[2] Baltimore City District Court Case No. 0B02243290. The case was ultimately forwarded to the Circuit Court, Case No. 814051005, and placed on the stet docket.

of the charges against him and that Hersl had planted both the drugs and the firearm. Ex. 1 (Hensler notes). Jones maintained his innocence and insisted on going to trial. Ex. 5 (affidavit of Christopher Jones).

In December 2014, Jones' case was transferred to Assistant Federal Defender Gary Christopher. Christopher interviewed Jones in January 2015, and Jones again asserted his innocence and explained that Hersl had planted the evidence against him. Jones' version of the story was consistent with what he had told Hensler four months earlier. Ex. 2 (Christopher Notes). According to Christopher, Jones at all times maintained his innocence and was adamant that Hersl planted the drugs and gun. Ex. 6 (affidavit of Gary Christopher).

During the course of his representation, Christopher specifically sought discovery of Baltimore Police Department files on the four officers involved in Jones' arrest, but he never received the requested information. Instead, the Government offered Jones a plea for a 41-month sentence.

On March 10, 2015, apparently concerned that his claims of innocence and police misconduct were being ignored, Jones wrote a letter to the Court. In his letter, Jones again asserted his innocence and notified Judge Blake that "Detectives Daniel Hersl, Jordan Moore and Joseph Wizculis are known in the community for all sorts of criminal misconduct." Consistent with what he had told Hensler and Christopher, Jones told the Court that these officers had planted the drug and firearm evidence in his case. Jones also expressed his concerns that he was being victimized by these officers and that there was no court date scheduled. Ex. 7 (Jones letter to Judge Blake).

**e. Jones Pleads Guilty**

On March 25, 2015, barely two weeks after his letter to the Court, Jones reluctantly accepted the Government's offer and pleaded guilty to Count One of the indictment (felon in possession). Jones was sentenced to 41 months in accordance with the Rule 11(c)(1)(C) plea. According to Christopher, pleading guilty was a very difficult decision for Jones. He had consistently insisted on going to trial, but because Christopher believed he was facing a very long sentence if convicted at trial, Jones ultimately agreed to the 41-month sentence. Ex. 5 (Jones affidavit). Christopher still recalls that Jones did not want to plead guilty but felt compelled to, given the lengthy sentence he believed he was facing if convicted after a trial, and the risk of trying a case with a dishonest officer. Ex. 5, Ex. 6 (Christopher affidavit). By that time, Jones had been detained for 18 months, and he was tired of waiting to prove his innocence.

**f. New Evidence**

As this Court is now well aware, Hersl, along with several other Baltimore City police officers, was indicted on corruption-related charges on February 23, 2017, and a superseding indictment was filed on June 22, 2017. Ex. 8 (Indictment of BPD Officers); Ex. 9 (Superseding Indictment). The indictments reveal a pattern of gross misconduct by Hersl (and other officers), in which he has repeatedly victimized members of the community and defrauded the criminal justice system in connection with his duties as an officer. Specifically, there is now substantial, credible evidence that Hersl has, among other things, detained people who had not committed crimes, robbed and extorted people, and lied in police reports. These indictments confirmed what many in the community, including Jones, had long insisted: that Hersl, and other members of the Baltimore Police Department, were corrupt.

More significantly, these indictments are new evidence that Hersl has engaged in a pattern of fraudulent and criminal conduct dating back to at least November 2014 – just months after Jones was indicted federally, and well before he pleaded guilty in this case. Ex. 9. In fact, some of the other criminal conduct noted in the superseding indictment dates back to 2011. This evidence – which was made public on March 1, 2017 – could not have been discovered by Jones prior to his guilty plea. However, it is likely, given the brazenness and frequency of the misconduct, that Hersl had been committing these crimes against the community long before 2014. In fact, Hersl's conduct was so flagrant that, even after learning that he and the other members of Baltimore's Gun Trace Task Force were under investigation, he allegedly continued to engage in criminal conduct. Ex. 9.

Jones was on supervised release in this case when he learned of Hersl's indictment, and he wasted no time in contacting the Federal Public Defender's office to see what could be done about his case. On March 1, 2017 – the day the indictment became public – Jones called Assistant Federal Defender Rebecca Talbott, who was representing him in his pending Violation of Supervised Release. Jones told Talbott that he had repeatedly told Christopher that Hersl had planted the evidence in his case and that he was innocent of the charges. He explained that he ended up pleading guilty only because he was facing a lot of time and did not want to roll the dice with a lying officer at trial. Talbott contacted Christopher, who confirmed everything that Jones had relayed. Jones now seeks to have his claims of innocence heard, in light of this new evidence.

### III.    ARGUMENT

Jones' conviction must be vacated because it was obtained in violation of the Constitution and laws of the United States. First, Jones' plea was neither knowing nor intelligent,

7

in violation of the Due Process Clause. Second, the State withheld evidence from Jones in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and the Due Process Clause.

**a. Jones' petition is timely filed.**

Although this motion is filed more than one year after Jones' conviction became final, it is not procedurally barred because it is filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

Under 28 U.S.C. § 2255, a motion attacking a sentence is timely if filed within one year of newly discovered evidence, where that evidence supports the petitioner's claims and the petitioner acts with due diligence. 28 U.S.C. § 2255(f)(4). In this case, the new evidence is the federal indictment of Baltimore police officer Daniel Hersl. These indictments reveal that Hersl has engaged in a pattern of fraudulent and criminal misconduct as an officer since at least November 2014 – before Jones pleaded guilty – and likely long before then. Ex. 9 (Superseding Indictment). While Jones knew, from his own experience, that Hersl was corrupt, he was unable to prove it at the time he pleaded guilty. The new evidence of Hersl's egregious conduct while acting in his capacity as a police officer supports Jones' original claims that the charges against him were fabricated. While it is not direct proof that Hersl planted the drugs and gun in this case, the sheer scope of Hersl's criminal conduct certainly makes Jones' claim credible, and it throws Jones' entire case into question.

Jones contacted his attorney immediately upon learning of this new evidence. Since the original indictment was filed on February 23, 2017, and the superseding indictment on June 22, 2017, Jones could not have discovered this evidence prior to those dates, and he has acted diligently since learning of the indictment.

### b. Jones' plea was neither knowing nor voluntary and was entered in violation of due process.

Jones' conviction must be vacated because his guilty plea was rendered involuntary, and his due process rights violated, when he was induced to plead guilty as a result of Hersl's gross misconduct. A guilty plea "is more than a confession…; it is itself a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). As such, it is the highest form of self-incrimination. Thus, in order to be constitutionally valid, a guilty plea must be "the voluntary expression of [an accused's] own choice." *Brady v. U.S.*, 397 U.S. 742, 748 (1970). However, even a knowing and intelligent plea can be rendered involuntary when induced by police misconduct. *See U.S. v. Fisher*, 711 F.3d 460, 462 (4th Cir. 2013) (holding that officer's affirmative misrepresentation in application for search warrant "rendered defendant's plea involuntary and violated his due process rights").

To set aside a plea that is otherwise knowing and intelligent, a petitioner must show that (1) "some egregiously impermissible conduct" predated the entry of his plea, and (2) the misconduct was material to the decision to plead guilty. *Fisher*, 711 F.3d at 465 (citations omitted). Additionally, a petitioner need not establish that the Government knew of the misconduct at the time of the guilty plea, since "neither timing, nor the prosecution's good faith," are relevant to this inquiry. *Id.* at 467. Rather, what matters is that the misconduct "was probably relied upon by the defendant in deciding to plead guilty." *Id.* (citing *United States v. Hammerman*, 528 F.2d 326, 331 (4th Cir. 1975)) (internal quotations omitted).

In this case, both requirements are met. There is now reliable evidence that since at least 2014 – before Jones pleaded guilty – Hersl had been committing crimes against and violating the constitutional rights of some of the most vulnerable and marginalized members of our society, all while acting in his capacity as an officer of the law. The crimes of which Hersl has been accused

– robbery, extortion, fraud, and perjury – constitute impermissible government conduct. Indeed, such misconduct "strikes at the integrity of the prosecution as a whole." *Id.* at 466 (citations omitted). While the pending allegations against Hersl are not direct proof that he fabricated the charges and evidence in *this* case, the evidence of the widespread corruption of the BPD, and of Hersl in particular, cast doubt upon every case in which Hersl was involved. That doubt is even stronger in this case, where Jones' claims regarding the misconduct in his case are consistent with Hersl's alleged method of policing.

The misconduct was also material to Jones' decision to plead guilty. As the Supreme Court has noted, "the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him." *Brady v. U.S.*, 397 U.S. at 756. The credibility of Government witnesses plays a critical role in that assessment. In this case, Jones knew the officers were lying, but he did not have the evidence to prove this. Because he believed there was no way to establish that Hersl was lying, Jones' attorney viewed the Government's case as a strong one and advised Jones to plead guilty. Ex. 5 (Jones affidavit); Ex. 6 (Christopher affidavit). Had trial counsel possessed this new evidence, his entire approach to the case might have been different. Ex. 6.

In addition, Jones felt coerced into pleading guilty because he felt he did not stand a chance against an officer like Hersl, who was willing to lie under oath. Ex. 5. To be sure, the type of misconduct in which Hersl engaged inherently coerces guilty pleas, because it tends to discourage defendants like Jones from insisting upon their innocence and demanding a trial. Had Jones known about Hersl's extensive criminal conduct, he would have had an entirely different view of the Government's case, and he would have insisted on going to trial.

**c. The State committed a *Brady* violation.**

The State violated *Brady v. Maryland*, 373 U.S. 83 (1963), and the Due Process Clause of the Constitution, when it failed to disclose the investigation into corruption by officer Hersl.

To prove a *Brady* violation, a defendant must show that non-disclosed evidence was (1) favorable to the defendant; (2) material; and (3) that the Government failed to disclose the evidence. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Each of these criteria is met in the instant case.

The alleged corruption of Hersl is favorable to Jones because it shows that Hersl had a pattern and practice of committing armed robberies of individuals, planting evidence on those individuals, and lying about it in police documents and court testimony. This corruption was of such a scale that evidence of it extended well beyond "impeachment" evidence. Not only does the evidence – revealed in the federal indictment – completely destroy Hersl's credibility, but it helps prove Jones' innocence. It shows that Jones was likely telling the truth when he independently described a scenario to his lawyers – and to the Court – that was years later echoed by federal investigators in the indictments against Hersl.

It appears that the federal investigation into Hersl was underway prior to Jones pleading guilty. While Jones does not know precisely when investigators first learned that Hersl was corrupt, it appears that knowledge can, at the very least, be traced back to 2015, according to a public statement by Baltimore City Police Commissioner Kevin Davis, who said he had been aware of the investigation since it was initiated in 2015. Christine Boynton, *Police Commission: Indictments of '7 dirty cops' result of rock solid investigation*, FOX 45 NEWS, Baltimore, Friday, March 3, 2017, *available at* http://foxbaltimore.com/news/local/police-commissioner-indictments-of-7-dirty-cops-result-of-rock-solid-investigation.

As soon as this information about Hersl was known, the authorities should have turned it over to defense counsel. If they had, Jones would have never pleaded guilty and he never would have been convicted.

## IV.   CONCLUSION

Jones' constitutional due process rights were violated when he was induced to plead guilty to a crime that he did not commit. As a result, Jones spent a total of three years in prison. Now that the widespread corruption of the Baltimore Police Department, and of Daniel Hersl specifically, has been exposed, this Court should correct this grave miscarriage of justice and vacate Jones' sentence.

Respectfully submitted,

_____/s/_____
C. Justin Brown
Brown & Nieto, LLC
231 E. Baltimore St., Suite 1102
Baltimore, MD 21202
(410) 244-5444
*Attorneys for Petitioner*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **13th** day of **September, 2017**, a copy of the foregoing Motion was sent to each of the parties via CM/ECF.

_____/s/_____
C. Justin Brown